Opinion filed April 20, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed April 20, 2006                                                                                                                  

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00166-CR 

 

                                                    __________

 

                               WILBERT
EARL BATTLES, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 104th District Court

 

                                                          Taylor
County, Texas

 

                                                 Trial
Court Cause No. 14,961-B

 



 

                                                                   O
P I N I O N

The jury convicted appellant of the state jail
felony offense of possession of less than one gram of cocaine.  The trial court assessed punishment at
eighteen months confinement in the State Jail Division of the Texas Department
of Criminal Justice.  In his sole
appellate issue, appellant argues that the trial court erred in allowing the
State to impeach him with a seventeen-year-old felony conviction for credit card
abuse.  We reverse and remand.








Background Facts

The evidence at trial showed that, during the
afternoon of June 18, 2003, Officers Rodney Smith and Tommy Pope of the Abilene
Police Department were patrolling an area of Abilene known for drug
activity.  The officers saw appellant
walking down the street, and they decided to talk with him.  Officer Smith got out of the van to talk with
appellant.  Officer Smith testified that,
after he got out of the van, he saw appellant throw a crack pipe to the ground.  The evidence showed that a crack pipe is used
to smoke crack cocaine.  Officer Smith said
that he picked up the crack pipe and placed appellant under arrest.

Officer Pope testified that he searched appellant
at the scene.  Officer Pope said that he
found a Bic lighter and a Chore Boy B
a copper scouring pad used to filter crack cocaine when smoking it B in appellant=s
front right pants pocket.  Officer Pope
also testified that the crack pipe had a Chore Boy in it.

The officers took appellant to the Law Enforcement
Center, where they processed the evidence and interviewed appellant.  The officers testified that appellant asked
whether he could do anything to help his case. 
Officer Smith said that appellant offered to assist the police as an
informant in exchange for consideration on his possession charge.  Based on appellant=s
offer to provide information, Officer Smith said that he agreed to hold off on
filing a charge against appellant. 
Appellant was released on the day of his arrest.  Officer Smith testified that appellant failed
to provide any information to the police. 
Therefore, on July 29, 2003, Officer Smith submitted the crack pipe to
the Department of Public Safety Lab for testing.

Bill Chandley, a chemist with the DPS, tested the
crack pipe for cocaine.  He said that
residue in the crack pipe tested positive for cocaine.








            Appellant testified that he found the crack pipe in
question, along with a Chore Boy, on the street in his neighborhood and that he
was walking to a dumpster to throw the crack pipe away when the officers
stopped him.  Appellant said that he knew
what a crack pipe was used for but that he had not smoked crack cocaine in the
crack pipe.  He said that he did not know
whether there was any cocaine in the crack pipe.  He said that he dropped the crack pipe on the
ground after the officers stopped him. 
Appellant testified that the officers searched him at the scene.  Appellant said that he did not have a Chore
Boy in his pocket and that Officer Pope had lied to the jury when he testified
about finding a Chore Boy in appellant=s
pocket.

Appellant testified about the discussions at the
Law Enforcement Center.  Appellant said
that the officers brought up the subject of him working for them as an
informant.  He said that the officers
questioned him about three men and that the officers told him, if he could get
these three men, he could go on with the rest of his life.  Appellant said he believed the officers had
agreed to drop the charges in exchange for his assistance.  He said that, after the discussions at the
Law Enforcement Center, the officers dropped him off in an alley on Pine
Street.  Appellant testified that, later
that day, he called Officer Smith and provided him with information leading to
the arrest of one of the three men.

During cross-examination of appellant, the trial
court allowed the State, over appellant=s
objection, to impeach appellant with a seventeen-year-old felony conviction for
credit card abuse. The trial court found that the probative value of the
conviction on the issue of appellant=s
credibility substantially outweighed its prejudicial effect to appellant.  The State questioned appellant about the
conviction and introduced a copy of the pen packet relating to the conviction.

                                    Admissibility
of Remote Conviction for Impeachment

Tex. R.
Evid. 609(a) provides that the credibility of a witness may be attacked
by admitting evidence that the witness has been previously convicted of a
felony or a crime of moral turpitude if the trial court determines that the
probative value of admitting the evidence outweighs its prejudicial
effect.  Tex. R. Evid. 609(b) limits Rule 609(a) by providing that
evidence of a prior conviction is inadmissible if more than ten years have
elapsed since the later of the date of conviction or of release from
confinement:

[U]nless
the court determines, in the interests of justice, that the probative value of
the conviction supported by specific facts and circumstances substantially
outweighs its prejudicial effect. 

 








The age of a conviction is measured from the date
of the conviction or release, whichever is later, to the date the evidence of
the conviction is offered at trial.   Sinegal v. State, 789 S.W.2d 383, 387
(Tex. App.CHouston
[1st Dist.] 1990, pet. ref=d).  In this cause, appellant=s prior conviction occurred in 1988,
and appellant  received a five-year
sentence for the conviction.  The record
shows that, with time credited, appellant=s
sentence began to run on December 20, 1987. 
Although the record does not show the date of appellant=s release from prison, the latest date
appellant could have been released was December 20, 1992, about twelve years
before the trial date in this cause. 
Rule 609(b) applies to the admissibility of appellant=s prior conviction because appellant=s release occurred more than ten years
before the trial date in this cause.

The trial court has wide discretion in deciding
the question of admissibility of a prior conviction, and its decision will not
be reversed unless an appellant shows a clear abuse of discretion.  Theus v. State, 845 S.W.2d 874, 881
(Tex. Crim. App. 1992); Hankins v. State, 180 S.W.3d 177, 180 (Tex. App.CAustin 2005, pet ref=d); Hernandez v. State, 976
S.W.2d 753, 755 (Tex. App.CHouston
[1st Dist.]), pet. ref=d,
980 S.W.2d 652 (Tex. Crim. App. 1998). 
In Theus, the Court of Criminal Appeals set forth five
nonexclusive factors that trial courts must use in determining whether the
probative value of a conviction outweighs its prejudicial effect.  Although Theus involved Rule 609(a)
and did not involve a remote conviction under Rule 609(b), we find its
balancing test for probative value instructive for the purposes of a Rule
609(b) analysis.  See Hankins,
180 S.W.3d at 180-81.[1]  Under Theus, in weighing the probative
value and the prejudicial effect of a conviction, a trial court must consider
(1) the impeachment value of a prior crime, (2) the temporal proximity of the
prior crime relative to the charged offense and the defendant=s subsequent history, (3) the similarity
between the prior offense and the charged offense, (4) the importance of the
defendant=s
testimony, and (5) the importance of the credibility issue.  Theus, 845 S.W.2d at 880.

Impeachment Value 








The impeachment value of crimes that involve
deception is higher than the impeachment value of crimes that involve
violence.  Theus, 845 S.W.2d at
881.  Credit card abuse is a crime of
deception rather than of violence; and, thus, a credit card abuse conviction
may have high impeachment value.  See
Tex. Pen. Code Ann. '
32.31 (Vernon Supp. 2005); LaHood v. State, 171 S.W.3d 613, 621 (Tex.
App.CHouston
[14th Dist.] 2005, pet. ref=d).  However, in this cause, appellant=s conviction occurred seventeen years
before trial. A remote conviction must have occurred at a time sufficiently
recent to have some bearing on the present credibility of the witness.  Miller v. State, 549 S.W.2d 402,
403-04 (Tex. Crim. App. 1977); Hernandez, 976 S.W.2d at 761; Sinegal,
789 S.W.2d at 387.  Appellant=s conviction for credit card abuse did
not occur Aat a time
sufficiently recent@ to have
a bearing on his credibility at the time of trial.  Therefore, the conviction had limited, if
any, probative value on the issue of appellant=s
credibility as a witness.  The first Theus
factor weighs heavily against admission in this cause.

Temporal Proximity

A remote conviction may be admissible when the
record shows a lack of reformation:  that
is, if the defendant has also been convicted of a felony or crime of moral
turpitude between the remote conviction and the time of trial.  Lucas v. State, 791 S.W.2d 35, 51
(Tex. Crim. App. 1989); Polk v. State, 865 S.W.2d 627, 631 (Tex. App.CFort Worth 1993, pet ref=d); Kizart v. State, 811 S.W.2d
137, 141 (Tex. App.CDallas
1991, no pet.); Roberts v. State, 634 S.W.2d 767, 769 (Tex. App.CFort Worth 1982, pet. ref=d). 
In this case, the record does not show that appellant was convicted of
any felonies or crimes involving moral turpitude between the credit card abuse
conviction and the time of trial.[2]  Therefore, the second factor, temporal
proximity, weighs against admission in this cause because the conviction
occurred so long before appellant=s
trial.

Similarity of Offenses     

When a defendant=s
prior offense and the charged offense are similar, a danger arises that the
jury will convict the defendant based on a perception of past conduct rather
than based on the facts of the charged offense. 
Therefore, if the prior offense is similar to the charged offense, the
third factor weighs against admission of the prior conviction.  Theus, 845 S.W.2d at 881.  Here, appellant=s
prior offense and the charged offense are dissimilar.  Therefore, the third factor weighs in favor
of admission.

Importance of Defendant=s Testimony and Credibility

The fourth and fifth Theus factors are
related and address the nature of the defense and the means available to a
defendant to prove that defense.  If a
defendant presents a defense through the testimony of other witnesses, the
defendant=s
credibility may not be a critical issue. 
However, when a case involves only the testimony of the defendant and
the State=s
witnesses, the importance of the defendant=s
credibility and testimony escalates.  As
the importance of the defendant=s
testimony escalates, so will the need to allow the State an opportunity to
impeach the defendant=s
credibility.  Theus, 845 S.W.2d at
881.  In this case, appellant was the
only defense witness and the only witness who testified that he did not commit
the offense.  Appellant=s testimony contradicted the police
officers=
testimony.  For example, appellant
testified that Officer Pope did not find a Chore Boy in his pocket during the
search.  Appellant also said that the
police officers initiated the conversation about appellant working for the
police as an informant.  Appellant=s defense depended almost entirely on
his testimony and credibility. 
Therefore, the fourth and fifth Theus factors weigh in favor of
admission of the prior conviction.

                                                            Conclusion

Appellant=s
prior conviction happened so long ago that it had little, if any, probative
value on the issue of appellant=s
credibility at the time of the trial in this case.  Thus, even though some of the Theus factors
favor admission, the lack of probative value of the seventeen-year-old
conviction overrides those factors.  The
State did not show that the probative value of the prior conviction
substantially outweighed its prejudicial effect.  Therefore, we hold that the trial court
abused its discretion in admitting the evidence of appellant=s prior conviction.

                                                                  Harm
Analysis








When a trial court errs in admitting a prior
conviction, the appellate court reviews the record to determine whether the
trial court=s error
affected appellant=s
substantial rights. Tex. R. App. P.
44.2(b); Hernandez, 976 S.W.2d at 756. 
It is well established that a conviction will not be reversed for error
in the admission of evidence that did not injure the defendant.  Alexander v. State, 740 S.W.2d 749,
765 (Tex. Crim. App. 1987).  In
determining whether the error was harmless, the test is not whether a
conviction could have been had without the improperly admitted evidence but,
rather, whether there is a reasonable possibility that the evidence might have
contributed to the conviction or affected the punishment.  Id. 
Thus, if there is a reasonable possibility that inadmissible
evidence might have contributed to either the conviction or punishment
assessed, then the error in admission is not harmless error.  In applying the test, the main consideration
is the probable impact of the evidence on the minds of the average jury.  Id.; Sinegal, 789 S.W.2d at
388.

Appellant claimed at trial that he did not
intentionally or knowingly possess cocaine. 
Appellant testified that he planned to throw the crack pipe into a
dumpster and that he did not know whether the crack pipe contained
cocaine.  His testimony contradicted the
testimony of the police officers in many respects.  For example, he testified that the officers
did not find a Chore Boy in his pocket, that the officers brought up the
subject of him working for the police, and that he provided information to
Officer Smith that led to an arrest. 
Appellant=s
credibility was critical to his defense that he did not intentionally or
knowingly possess the cocaine.

The State emphasized the seventeen-year-old
conviction during closing argument:

[PROSECUTOR]: What=s
important about a case like B
or a crime like credit card abuse is it=s
a crime that involves fraud.  It=s a crime that involves
dishonesty.  And it says something about
the credibility of a witness.  And here
we have two different versions of the offense. 
We have B one, we
have a person who=s been
sent down to prison before for being dishonest. 
And then we have two officers.

 

The State also made the following comments during closing argument:

[PROSECUTOR]: And so basically, I think that this
is a really simple case, and instead of treating it like a really simple case,
all this other extraneous stuff is being argued to try to take away from the
simplicity of it, because what it all boils down to is we have a person who=s been to prison for a crime involving
dishonesty.

    

Given the State=s
emphasis of the prior conviction during closing argument, we find that there is
a reasonable possibility that admission of the prior conviction might have
contributed to the jury=s
decision to convict appellant.  Therefore,
the admission of appellant=s
remote conviction constituted reversible error.








On appeal, the State argues that the admission of
the prior conviction did not harm appellant, because appellant admitted in his
testimony that he possessed the crack pipe. 
However, the State could not satisfy its burden of proof by establishing
that appellant possessed a crack pipe. 
Rather, the State had the burden to prove that appellant intentionally
or knowingly possessed the cocaine. 
Appellant claimed that he did not intentionally or knowingly possess the
cocaine, and his testimony and credibility were important to his defense.  There is a reasonable possibility that the
evidence of the prior conviction contributed to the jury=s
decision to convict appellant.  We
sustain appellant=s issue.

                                                               This
Court=s Ruling

We reverse the trial court=s
judgment and remand this cause to the trial court.

 

TERRY McCALL

JUSTICE

 

April 20, 2006

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











[1]We note, in Hernandez, the court determined
that, in considering admissibility under Rule 609(b), Awe look exclusively to the strictures of rule 609(b),
not to the multiple factors of Theus.@ 976
S.W.2d at 755.  We look to the Theus
factors in this case as a guide for determining the probative value and
prejudicial effect of appellant=s prior conviction on the credibility issue.  Our holding in this case would be the same
using the Hernandez approach.





[2]On appeal, the State asserts that appellant had an
intervening conviction for unlawful carrying of a weapon.  The State argues that this conviction may be
used to show a lack of reformation. 
During trial, the prosecutor referred to a 2003 conviction for unlawful
carrying of a weapon, and the prosecutor stated that appellant had received a
thirty day sentence in jail and a $300 fine for the conviction.  However, the State did not offer evidence of
the conviction at trial.  Thus, the State
did not prove that the conviction was for a felony or crime of moral
turpitude.  In the absence of such proof,
the conviction may not be used in considering a lack of reformation.  See Davis v. State, 545 S.W.2d 147,
150 (Tex. Crim. App. 1976)(a conviction of a misdemeanor not involving moral
turpitude is not considered a lack of reformation).