# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-07-00278-CR

**Gerald John Conger, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-06-204445, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

The State charged appellant, Gerald John Conger, with felony driving while intoxicated (DWI). *See* Tex. Penal Code Ann. § 49.04(a) (West 2003), § 49.09(b)(2) (West Supp. 2007). Conger pleaded not guilty to the offense, stipulated to the prior convictions,[1] and waived a jury trial. After hearing the evidence and testimony, the trial judge found Conger guilty of second-degree felony DWI and sentenced him to three years' imprisonment.[2] In his sole point of error, Conger argues that the evidence is factually insufficient to support his conviction. In particular, Conger claims that the evidence failed to show that he lacked control over his physical and mental

---

[1] Conger had two prior DWI offenses, one occurring on July 31, 1987, and the other on March 21, 2006. In 1994, he was also convicted of involuntary manslaughter resulting from another DWI incident. *See* Tex. Penal Code Ann. § 12.42(a)(2) (West Supp. 2007).

[2] In this case, Judge Jon N. Wisser presided over the guilt/innocence and sentencing portions of the trial, but the judgment was signed by Judge Baird, who took the bench following Judge Wisser's retirement.

faculties, that his blood-alcohol concentration was above the legal limit, or that the traffic offense he committed, failing to signal when pulling out from a parked position, was indicative of impairment. We affirm the judgment.

## BACKGROUND

Around midnight on August 15, 2006, Austin Police Officers Thompson and Trujo were patrolling the area of 12th and Chicon Streets. The officers observed a truck pull up to the curb in the 1200 block of Chicon. A female, who Thompson recognized as a prostitute, approached the vehicle and got in the passenger seat. After driving one block on Chicon Street, the vehicle again pulled up to the curb, and the female got out of the truck. Thompson testified that he believed that a drug transaction had just taken place in the vehicle, based on his experience as a police officer in that area and his knowledge that prostitutes are often drug addicts and that they often deal drugs in order to support their addictions.[3] After the woman got out of the truck, the officers saw the truck pull away from the curb without signaling and initiated a traffic stop.[4]

Thompson stated that he approached the driver of the truck in order to issue a citation and identified the driver as Conger. Concerned that Conger might be concealing narcotics on his

---

[3] Thompson testified that this "particular intersection is probably the largest open-air drug market in the City of Austin." He further stated, when asked whether he had specific knowledge that this woman had been involved in drug transactions before, "I haven't met a prostitute that is not addicted to crack cocaine. I have seen numerous prostitutes arrested for delivery of a controlled substance."

[4] The transportation code provides that "an operator shall use the signal authorized by Section 545.106 [hand, arm, or signal lamp] to indicate an intention to turn, change lanes, or start from a parked position." Tex. Transp. Code Ann. § 545.104(a) (West 1999). Conger does not challenge the testimony that he was starting from a parked position on Chicon Street.

2

person, Thompson asked Conger to open his mouth so that he could check for drugs.[5] In so doing, Thompson noticed a strong odor of alcohol on Conger's breath.

Within a few minutes, Austin Police Officer Aspenleiter arrived on the scene as backup. Thompson, who was nearing the end of his shift, told Aspenleiter that he suspected Conger had been driving while intoxicated, and Aspenleiter took over the DWI investigation. Aspenleiter observed at least two open containers through the window of Conger's truck. Aspenleiter directed Conger to the front of his patrol car for an interview and noticed that when Conger walked, "he had a little sway to him; I could smell the odor of alcohol on his breath; his eyes were glassy and bloodshot and watery; and when he talked, his speech was a little slurred." Aspenleiter's observations led him to believe that Conger was a candidate for the standard field-sobriety tests.

Conger performed the horizontal gaze nystagmus (HGN) and vertical nystagmus tests but refused to do the walk-and-turn test and the one-leg stand test. Aspenleiter observed all six clues of intoxication during Conger's HGN test. Aspenleiter testified that, based on the totality of the circumstances—his observations of Conger's behavior, the result of the HGN test, the odor of alcohol on Conger's breath, and the open containers—he believed that Conger was impaired and did not have the mental or physical faculties to safely operate a vehicle. Therefore, Aspenleiter placed Conger under arrest and read him the standard DIC-24 statutory warning required for DWI arrests. *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2007). Conger refused to submit to a breath test.

---

[5] Thompson wanted "to make sure that he didn't have anything – any narcotics concealed in his mouth due to the fact that that's 90 percent of the time is where somebody that has purchased crack is keeping it nowadays." Thompson testified that he had seen suspects swallow drugs in order to avoid being charged with possession and that he wanted to prevent Conger from attempting to do this because ingesting crack-cocaine is potentially lethal.

At trial, Conger's attorney cross-examined Aspenleiter regarding his investigation tactics and suggested that Aspenleiter had been overly aggressive in an effort to intimidate Conger into agreeing to perform the sobriety tests. Aspenleiter testified that Conger was not cooperative and that he was trying to make Conger listen so that Conger would have "an opportunity to refuse at every step of the way." While Aspenleiter acknowledged that Conger was not a "fall-down" drunk, he testified that in his opinion, Conger was impaired.

In addition to the testimony of Thompson and Aspenleiter, the court admitted into evidence a DVD recording of Conger's detention and arrest, including Aspenleiter's repeated requests for Conger to pay attention while he explained the field-sobriety tests and Conger's repeated refusals to perform them. When asked whether he had had anything to drink, Conger admitted to having about three beers since five o'clock that evening. The recording also indicates that Conger was uncooperative and had to be asked several times before he would follow directions; Aspenleiter repeatedly had to ask Conger to keep his hands by his side and stand with his feet together. When Aspenleiter was performing the HGN test, during which Conger was asked to keep his head still and not to speak, Conger continued talking, and his speech throughout the encounter was noticeably slurred. In its closing argument, the State conceded that the arrest was perhaps not the "ideal cop/citizen situation," but argued that the evidence nonetheless showed that, under the totality of the circumstances, Conger was guilty of driving while intoxicated. The trial judge found Conger guilty of driving while intoxicated, and Conger appeals.

## STANDARD OF REVIEW

In his sole point of error, Conger claims the evidence was factually insufficient to support his conviction. We begin a factual-sufficiency review with the presumption that the

evidence supporting the judgment is legally sufficient. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We view all of the evidence in a neutral light and will reverse only if the evidence supporting guilt is so obviously weak as to render the conviction clearly wrong and manifestly unjust, or if that evidence, although adequate when taken alone, is so greatly outweighed by the overwhelming weight of contrary evidence as to render the conviction clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000). An appellate court must be appropriately deferential to the verdict, in order to avoid substituting its own judgment for that of the fact-finder. *Vasquez*, 67 S.W.3d at 236. Our evaluation may not intrude upon the fact-finder's role as the sole judge of the weight and credibility accorded any witness's testimony. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The weight to be given contradictory testimonial evidence is within the sole province of the fact-finder because it turns on an evaluation of credibility and demeanor. *Id.* at 407-09. In a bench trial, the trial judge is the sole fact-finder, and his credibility and weight determinations are entitled to the same deference as that given to a jury's determinations. *See Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984).

## DISCUSSION

Under the penal code, a person commits the offense of driving while intoxicated "if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04 (West 2003). Intoxication means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol," or "having an alcohol concentration of 0.08 or more." *Id.*

5

§ 49.01(2)(A), (B). Intoxication may be proved under either the impairment or the per se definition. *See State v. Mechler*, 153 S.W.3d 435, 437 (Tex. Crim. App. 2005).

In challenging the factual sufficiency of the evidence, Conger claims that the State failed to prove that he lacked control of his physical and mental faculties at the time he was pulled over on a "pretext" traffic stop for a possible drug offense. As the State correctly points out, the officer's subjective intent or "pretext" does not make an otherwise legal stop unlawful. *See State v. Gray*, 158 S.W.3d 465, 469-70 (Tex. Crim. App. 2005) (officer entitled to search driver's person and passenger compartment of vehicle after making valid arrest for offense of turning without signaling, despite fact that officer "may have had another subjective motive" for initiating detention); *see also Castro v. State*, 227 S.W.3d 737, 739, 742 (Tex. Crim. App. 2007) (failure to signal is valid basis for traffic stop and subsequent search for narcotics). While Thompson initially believed that a drug transaction had taken place, prompting him to search inside Conger's mouth for hidden drugs, there was nothing unlawful in stopping Conger for failure to use his turn signal in violation of the transportation code.

As evidence that Conger's physical and mental faculties were impaired at the time of the stop, Thompson and Aspenleiter both testified that Conger had a strong odor of alcohol on his breath. In addition, Aspenleiter saw multiple open alcoholic beverage containers inside Conger's vehicle. Aspenleiter testified that when he had Conger walk over to his vehicle in order to perform the sobriety test, Conger "had a little sway to his walk." Aspenleiter further testified that Conger's eyes were bloodshot and that his speech was slightly slurred. According to Aspenleiter, Conger failed the HGN test by showing six out of six indicators for intoxication and refused to submit a breath test.

6

The uncorroborated testimony of an experienced arresting officer is sufficient to prove the element of intoxication. *Annis v. State,* 578 S.W.2d 406, 407 (Tex. Crim. App. 1979); *Dumas v. State*, 812 S.W.2d 611, 615 (Tex. App.—Dallas 1991, pet. ref'd). The record shows that Aspenleiter was an experienced officer: he had been in law enforcement for approximately five years, had received specific training relating to DWI arrests, and had investigated "a little over 200" DWIs. Based on his experience and observations, he concluded that Conger was intoxicated.

Furthermore, Conger's refusal to submit to a breath or blood test is an additional factor that the fact-finder may consider in determining whether he was intoxicated at the time of the alleged offense. *See* Tex. Transp. Code Ann. § 724.061 (West 2003); *Griffith v. State*, 55 S.W.3d 598, 601 (Tex. Crim. App. 2001) (refusal to take blood-alcohol test was relevant as evidence of intoxication); *Gaddis v. State*, 753 S.W.2d 396, 399 (Tex. Crim. App. 1988) (intoxication is legitimate deduction from defendant's refusal to take breath test). Based on this refusal and the officers' testimony regarding Conger's appearance and behavior at the time of the stop, we conclude that the evidence of Conger's impairment is not so weak as to render the conviction clearly wrong and manifestly unjust.

Nor do we think that the evidence in support of the verdict is greatly outweighed by contrary evidence showing that Conger was not intoxicated. *See Watson*, 204 S.W.3d at 414-15. Under a factual-sufficiency review, we do not view each piece of evidence in isolation. Rather, we must view all the evidence, both for and against the finding of guilt, in a neutral light. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). The evidence Conger cites as weighing in his favor includes (1) the videotape, which shows that he was not a "fall-down" drunk; (2) the lack of blood

or breath test results indicating intoxication; and (3) the lack of erratic driving or any type of driving which indicated intoxication.

We agree that the videotape shows that Conger was able to stand, but it also corroborates Aspenleiter's testimony that Conger walked with "a slight sway" and spoke with slurred speech. Regardless, the fact that the videotape shows that Conger was not completely impaired to the point that he was unable to stand does not greatly outweigh other evidence that Conger was intoxicated, such as the testimony that his breath smelled strongly of alcohol and that he failed the HGN test by exhibiting all six clues of intoxication.

With respect to the lack of blood or breath test evidence, Conger asserts that there was no evidence showing that his blood-alcohol level was over the legal limit, and that therefore the evidence is insufficient to establish his guilt. Implicit in this argument is the suggestion that the State was required to submit evidence that Conger's blood-alcohol concentration was .08 or greater, despite the fact that Conger refused to provide a breath specimen.[6] However, in this case, Conger was not charged with DWI on the theory that his blood-alcohol level was over the legal limit under the per se standard of intoxication contained in the penal code. *See* Tex. Penal Code Ann. § 49.01(2)(B). Rather, he was indicted, charged, and convicted of DWI under the impairment definition, requiring that the State prove beyond a reasonable doubt that Conger did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol. *Id.* § 49.01(2)(A). Conger is therefore incorrect to argue that the State was required to show that

---

[6] As noted above, refusal is a factor the fact-finder is permitted to consider in determining whether a person may have been intoxicated at the time of the alleged offense. *See* Tex. Transp. Code Ann. § 724.061 (West 2003); *Griffith v. State*, 55 S.W.3d 598, 601 (Tex. Crim. App. 2001); *Gaddis v. State*, 753 S.W.2d 396, 399 (Tex. Crim. App. 1988).

Conger's blood-alcohol level was above .08 when he was instead charged under the impairment definition.

Finally, Conger argues that there was no evidence suggesting that the traffic offense he committed was indicative of his impairment. There is no requirement that the officer must observe signs of intoxication while Conger was driving his vehicle. The traffic offense that serves as a predicate for the initial detention need not show impairment in order for Conger to be arrested and convicted of DWI. Here, Aspenleiter concluded that Conger was intoxicated based on his appearance and conduct immediately after being stopped for his failure to signal. The officers' observations of Conger after Conger exited the vehicle are sufficient to support a determination of intoxication. *See Rodriguez v. State*, 31 S.W.3d 359, 361 (Tex. App.—San Antonio 2000, pet. ref'd) (holding that investigating officer's testimony that he thought appellant was intoxicated based entirely on conduct after appellant exited vehicle, rather than how appellant drove vehicle, was factually sufficient to support DWI conviction).

The State's allegation that Conger's mental and physical faculties were impaired was based on evidence that Conger's breath had a strong odor of alcoholic beverage, that he failed the HGN test, that his speech was slightly slurred and his eyes were watery, and that he refused to submit a breath specimen. The evidence presented in this case to support a determination that Conger was driving while intoxicated is not so obviously weak as to render the conviction clearly wrong or unjust. Although the trial court observed that it was a "close case," we hold that there was sufficient evidence to determine that Conger was driving while intoxicated.[7]

---

[7] In assessing Conger's punishment, the trial court noted that while Conger was indeed guilty of driving while intoxicated, "the evidence wasn't as strong as [he] would have liked for [him] to impose a sentence of the magnitude that the State desires."

We overrule Conger's point of error and affirm the judgment of conviction.

## CONCLUSION

Because the evidence is factually sufficient to support the trial court's judgment, we affirm the judgment of conviction.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   August 1, 2008

Do Not Publish